**FILED**
**U.S. Bankruptcy Appellate Panel**
**of the Tenth Circuit**

**May 8, 2017**

**Blaine F. Bates**
**Clerk**

NOT FOR PUBLICATION[*]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE VIRGINIA ANTOINETTE WERTH, | BAP No. CO-16-022 |
| Debtor. | |
| _____ | |
| HARVEY SENDER, Chapter 7 Trustee, | Bankr. No. 13-30926 |
| | Adv. No. 14-01528 |
| Plaintiff - Appellee, | Chapter 7 |
| v. | |
| VIRGINIA ANTOINETTE WERTH, | OPINION |
| Defendant - Appellant. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado
_____

Before **KARLIN**, Chief Judge, **JACOBVITZ**, and **MOSIER**, Bankruptcy Judges.
_____

**JACOBVITZ**, Bankruptcy Judge.

_____

---

[*]     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

When Appellant Virginia Werth filed a Chapter 7 bankruptcy case she did not disclose an interest in beachfront property in Mexico, claiming she was not required to disclose it because it was not estate property. Upon learning of this property and its post petition sale, the Chapter 7 Trustee (the "Trustee") filed an adversary proceeding, seeking a determination that it was property of the bankruptcy estate, and for turnover of the sale proceeds pursuant to 11 U.S.C. § 542.[1] The bankruptcy court entered judgment in favor of the Trustee. Appellant appeals the judgment and order for turnover. For the reasons set forth below, we affirm the bankruptcy court's order.

## I. FACTUAL BACKGROUND

### a. Creation of the property interest at issue

Debtor's now-deceased husband, Ronald Werth, purchased a one-third share (with his brother Alvin and his father also each purchasing a one-third share) in beachfront property in Guaymas, Sonora, Mexico (the "Property") in the 1980s. Because Mexican law prohibits foreign nationals from owning beachfront properties as individuals,[2] each of them purchased the Property through a trust (the "Mexican Trust"). A Mexican financial institution served as the trustee of the Mexican Trust, and each held his one-third interest as a beneficiary of the Mexican Trust. The interests of the beneficiaries in

---

[1]    All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated. All references to "Rule" or "Rules" are to the Federal Rules of Bankruptcy Procedure, unless otherwise indicated.

[2]    The Mexican Constitution prohibits ownership of real property by foreign nationals within a zone of fifty kilometers of the country's borders or shores. Mex. Const. art. 27, § I.

the Mexican Trust are hereinafter referred to the "Mexican Trust Interest" and the one-third interest initially held by Ronald is hereinafter referred to as "Ronald's Mexican Trust Interest." Ronald and Alvin's father passed away in 1998, leaving his one-third Mexican Trust Interest to a third son. Alvin passed away in 2002, and Ronald passed away two years later, in 2004.

Prior to his death, Ronald created the Ronald Werth Trust (the "Werth Trust"). Ronald and his wife, Virginia (the "Debtor"), served as co-trustees of the Werth Trust. Upon Ronald's death, the Debtor became the sole trustee of the Werth Trust. In conjunction with the creation of the Werth Trust, Ronald also executed his last will and testament (the "Will"), which devised all of his assets not specifically mentioned in the Will to the Werth Trust. Ronald's Mexican Trust Interest was not mentioned in the Will and was to be held by the Werth Trust. Upon Ronald's death, the assets of the Werth Trust were to be distributed between two different trusts established by the Werth Trust: one solely for the benefit of the Debtor (the "Marital Trust") and the other for the benefit of the Debtor and Ronald's children (the "Family Trust"). Ronald's Mexican Trust Interest was to be distributed to the Family Trust.

The Debtor served as the sole trustee of the Marital Trust and the Family Trust and served as the personal representative of Ronald's probate estate. Upon Ronald's death, the Debtor, now also the sole Trustee of the Werth Trust, divided the Werth Trust's assets between the Marital and Family Trusts. Although the Debtor claims to have allocated

3

Ronald's Mexican Trust Interest to the Family Trust in August 2005,[3] the Debtor never documented the transfer of that asset to the Family Trust in the Mexican public record, in the probate case, or anywhere else until after she filed bankruptcy.

Approximately two years after the Debtor claims she allocated Ronald's Mexican Trust Interest to the Family Trust, the Debtor and Alvin's surviving spouse initiated a legal proceeding in Mexico to have their Mexican Trust Interests transferred into their names (the "Intestacy Proceeding"). They hired Maria Isabel Lizarrage Zatarain (the "Representative") under a power of attorney[4] to represent them, and the Debtor did not appear in person at the Intestacy Proceeding in Mexico. The Intestacy Proceeding resulted in entry of a judgment distributing Ronald and Alvin's Mexican Trust Interests to the Debtor and Alvin's spouse individually on October 15, 2007 (the "Intestacy Proceeding Judgment"). At trial, the Debtor testified she never intended to have any of

---

[3]    Order at 2, *in* Appellant's App. at 17; Asset Division at 1, *in* Appellant's App. at 59.

[4]    The Debtor testified that the Representative handled all affairs concerning the Property since its purchase in the 1980s. The Debtor believed the Intestacy Proceeding was necessary to renew what she understood to be a fifteen or thirty year lease of the Property. It does not appear that the Representative was an attorney. Tr. at 89-90, *in* Appellant's App. at 158-59.

the Mexican Trust Interest transferred to her individually,[5] and that she believed Ronald's

Mexican Trust Interest belonged to the Family Trust on the petition date.[6]

The Debtor's daughter, Rhonda Hathaway, replaced the Debtor as trustee of the

Family Trust in August 2013.[7] On December 26, 2013, the Debtor filed a Chapter 7

bankruptcy petition in the District of Colorado. The Debtor did not list either Ronald's

Mexican Trust Interest or the Property in her statements and schedules. The Property was

sold in May 2014, generating net sale proceeds of $156,840.49. A one-third share of the

net sale proceeds was deposited into the Debtor's bankruptcy attorney's trust account by

two transfers: (1) $20,060 on May 27, 2014; and (2) $30,000 on October 28, 2014, after

closing of the sale and dissolution of the Mexican Trust.[8] The Debtor did not amend her

statements and schedules at any point during the bankruptcy case to list Ronald's

Mexican Trust Interest or the proceeds from the sale of the Property as an asset of the

bankruptcy estate.

### b. Adversary Proceeding for Turnover

---

[5] The Debtor testified the Representative told her the Mexican Trust Interest could only be transferred to a person, not to a trust, and that the Representative never gave her the opportunity to designate the Family Trust as the holder of Ronald's Mexican Trust Interest. Tr. at 61, 91 *in* Appellant's App. at 130, 160.

[6] Tr. at 52, *in* Appellant's App. at 121.

[7] Tr. at 21, 28-29, *in* Appellant's App. at 90, 97-98. At oral argument, counsel for the Debtor stated the two orally agreed Rhonda Hathaway would serve as the trustee going forward, though no document memorialized the substitution.

[8] The two deposits total $50,060 even though one-third of the net proceeds is equal to $52,280. The parties did not offer evidence to explain the disparity in amounts. Order at 3, n.9, *in* Appellant's App. at 18.

Upon learning of the sale of the Property, the Trustee filed a *Complaint for Turnover of Property of the Estate Pursuant to 11 U.S.C. § 542, and for Entry of Judgment*, seeking turnover of the $52,280 proceeds to the Trustee.[9] The Trustee alleged the Debtor held Ronald's Mexican Trust Interest on the petition date and failed to disclose that interest in her statements and schedules. The Trustee alleged Ronald's Mexican Trust Interest became property of the bankruptcy estate when the Debtor filed the petition, and requested turnover of the proceeds of the sale of the Property allocated to the bankruptcy estate's interest in the Mexico Trust. The Debtor's answer asserted that she did not hold Ronald's Mexican Trust Interest individually and instead contended that any interest she held "was held in constructive and/or implied trust for the benefit of the [Family Trust],"[10] and that any proceeds from the sale of the Property remained property of the Family Trust.

At trial, the Trustee called Hector Calatayud Izquierdo, an expert in "Mexican trust law and in foreign real estate ownership in coastal areas"[11] (the "Expert"), as a witness. The Expert testified that Mexican law prohibited foreigners from individually owning title to real property within fifty kilometers from the Mexican shoreline, and

---

[9]     Appellant's App. at 4. Prior to filing this adversary proceeding, the Trustee filed Adversary Proceeding No. 14-01364, seeking to sell the Debtor's Mexican Trust Interest. However, once the Trustee learned the Property had already been sold, he voluntarily dismissed his complaint and filed another complaint, seeking turnover of the proceeds from the sale.

[10]    Answer at 4, *in* Appellant's App. at 11.

[11]    Tr. at 77, *in* Appellant's App at 146.

6

required that title must be held in a trust naming a Mexican financial institution as trustee and the foreign national as the beneficiary. The Expert reviewed the documents filed in the Intestacy Proceeding and testified that there was no mention of Ronald's Mexican Trust Interest being transferred to another trust or that the Debtor would hold the interest as trustee or in a fiduciary capacity.[12] The Expert explained that under the Intestacy Proceeding Judgment, each of Ronald and Alvin's one-third Mexican Trust Interests were distributed to the Debtor and Alvin's widow, in their individual capacities, on October 15, 2007.[13] The Expert also testified that under Mexican law it would have been possible for a United States trust to be the beneficiary of the Mexican Trust.[14]

The bankruptcy court issued an order (the "Order") finding that the Intestacy Proceeding Judgment resulted in the transfer of Ronald's Mexican Trust Interest from the Family Trust to the Debtor individually.[15] Because the Debtor never took any subsequent action to transfer the Mexican Trust Interest into the Marital Trust or Family Trust, the bankruptcy court concluded that she thus still owned Ronald's Mexican Trust Interest individually on the bankruptcy petition date. Accordingly, the bankruptcy court determined that Ronald's Mexican Trust Interest and any proceeds from the sale of the Property attributable to Ronald's Mexican Trust Interest became property of the

---

[12]    Tr. at 79, *in* Appellant's App. at 148.

[13]    Tr. at 81-82, *in* Appellant's App. at 150-51.

[14]    Tr. at 82, *in* Appellant's App. at 151.

[15]    Appellant's App. at 16. We note the Order contains a contradiction addressed later in this opinion.

7

bankruptcy estate pursuant to § 541(a). Based on this determination, the bankruptcy court ordered turnover of $52,280 to the Trustee for the benefit of the bankruptcy estate pursuant to § 542(a) and entered a judgment in favor of the Trustee in that amount.

## II. APPELLATE JURISDICTION

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[16] The Debtor appeals the Order and corresponding judgment, which finally disposed of an adversary proceeding on the merits.[17] This Court thus has jurisdiction over this appeal. None of the parties elected to have this appeal heard by the United States District Court for the District of Colorado following the Debtor's timely appeal. Therefore, the parties have consented to appellate review by this Court.

## III. STANDARD OF REVIEW

We review the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*.[18] The Debtor argues that because Ronald's Mexican Trust Interest is not property of the bankruptcy estate under § 541, the bankruptcy court erred in ordering its turnover pursuant to § 542. Whether a property interest is included in the

---

[16]  28 U.S.C. § 158(a)(1), (b)(1), & (c)(1); Rule 8005; 10th Cir. BAP L.R. 8005-1.

[17]  *Miller v. Bill & Carolyn L.P. (In re Baldwin)*, 593 F.3d 1155, 1159-60 (10th Cir. 2010) (concluding order in an adversary proceeding fully resolving whether property became property of estate was a final order for purposes of appeal).

[18]  *In re Miller*, 666 F.3d 1255, 1260 (10th Cir. 2012).

8

bankruptcy estate under § 541(a) and subject to turnover pursuant to § 542 is a legal conclusion reviewed *de novo*.[19] Mixed questions of law and fact are reviewed under the *de novo* or clearly erroneous standards, depending on whether the mixed question involves primarily the consideration of legal principles or a factual inquiry.[20] Whether the Debtor owned Ronald's Mexican Trust Interest upon commencement of the bankruptcy case is a mixed question of law and fact. For reasons discussed below, that issue involves primarily the consideration of legal principles because the underlying facts are largely undisputed. Accordingly, we will review the bankruptcy court's determination whether the Debtor owned Ronald's Mexican Trust Interest on the petition date *de novo*.

## IV.    DISCUSSION

The bankruptcy court concluded that the Intestacy Proceeding resulted in a distribution of two one-third interests in the Mexican Trust "individually to the Debtor and [Alvin's surviving spouse]" making the Debtor "the owner, individually, of a one-third interest in the beneficiary rights of the Mexican Trust."[21] Before discussing the

---

[19]    *LTF Real Estate Co. v. Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 643 (10th Cir. BAP 2014) ("We review a bankruptcy court's determination whether property is property of the estate *de novo*."), *aff'd*, 619 F. App'x 779 (10th Cir. 2015); *In re Graves*, 396 B.R. 70, 72 (10th Cir. BAP 2008) (stating whether bankruptcy court's turnover order is proper is an issue of law reviewed *de novo*).

[20]    *Wyoming v. United States Envtl. Prot. Agency*, 849 F.3d 861, 869 (10th Cir. 2017).

[21]    Order at 2, *in* Appellant's App. at 17. The Order provides that "[t]he result of the Mexican Proceeding was to take two one-third interests in the Mexican Trust out of the Family Trust and place them in the individual ownership of the Debtor and Joan Werth." Order at 3, *in* Appellant's App. at 18. After reviewing the record on appeal, it is clear that this statement was incorrect because only Ronald's one-third interest in the Mexican

9

Debtor's arguments that the bankruptcy court erred in so concluding, we first address a collateral issue that was neither raised nor properly preserved on appeal—the bankruptcy court's implicit recognition of the validity of the Intestacy Proceeding Judgment.

### a. The Debtor did not preserve any objection to the bankruptcy court's recognition of the Intestacy Proceeding Judgment for appeal

The Intestacy Proceeding Judgment is a judgment of a foreign nation. The bankruptcy court treated the Intestacy Proceeding Judgment as having preclusive effect in the adversary proceeding without examining whether it in fact had preclusive effect.[22] However, this does not invalidate the bankruptcy court's treatment of the Intestacy Proceeding Judgment as having preclusive effect.

"An appellant can fail to preserve an appeal point through either forfeiture or waiver. Forfeiture is the failure to timely assert a right; waiver is the intentional

---

Trust was held by the Family Trust. This misstatement by the bankruptcy court is immaterial because only Ronald's one-third interest was at issue in the bankruptcy case and on appeal, and the record supports the bankruptcy court's statement to the extent it relates to the title chain for Ronald's one-third interest in the Mexican Trust.

[22]    Under federal law, courts generally consider whether to recognize judgments of foreign nations under the doctrine of comity, explained by the Supreme Court in *Hilton v. Guyot,* 159 U.S. 113,  (1895). Comity, the Supreme Court held, "is the recognition which one nation allows within its territory to the . . . judicial acts of another nation . . . ." *Guyot,* 159 U.S. at 143. The general "[p]rinciples of comity require [the court] to examine the fairness of a foreign country's judicial procedures," including notice given to parties, before recognizing a judgment of a foreign country. *Leser v. Berridge,* 668 F.3d 1201, 1211 n.2 (10th Cir. 2011) (citing *Navani v. Shahani,* 496 F.3d 1121, 1131 (10th Cir. 2007)). Colorado has adopted the Uniform Foreign Money-Judgments Recognition Act of 1962, as revised in 2005, which governs recognition of foreign money judgments. The criteria under Colorado law for recognizing foreign non-money judgments, such as the Intestacy Proceeding Judgment, is less clear. But because the issue has been forfeited, we need not decide which law applies. *See* pp. 11-13, *infra.*

relinquishment or abandonment of a known right."[23] "Waiver is accomplished by intent, forfeiture comes about through neglect."[24] We forgo consideration of issues that have not been raised before the bankruptcy court.[25] Similarly, we will not consider issues presented on appeal that are inadequately pleaded, not pursued, or the subject of other dilatory conduct.[26] Indeed, "vague, arguable references to [a] point in the [trial court] proceedings do not . . . preserve the issue on appeal."[27]

The Debtor forfeited the issue of whether the Intestacy Court Judgment had preclusive effect in the proceeding before the bankruptcy court by not raising it below. The Debtor did not raise any issue regarding the binding effect of the Intestacy

---

[23]     *Sprint Nextel Corp. v. Middle Man, Inc.*, 822 F.3d 524, 531 (10th Cir. 2016) (citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011)).

[24]     *Richison*, 634 F.3d at 1228 (citing *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008)).

[25]     *Tele-Commc'ns, Inc. v. Comm'r of Internal Revenue*, 104 F.3d 1229, 1233 (10th Cir. 1997) ("issue must be 'presented to, considered [and] decided by the trial court' before it can be raised on appeal." (quoting *Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993))).

[26]     *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007) (declining to review an issue on appeal where the appellant "failed to provide arguments or authorities in support of th[e] issue."); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (declining "to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief.").

[27]     *Lyons*, 994 F.2d at 721 (quoting *Monarch Life Ins. Co. v. Elam*, 918 F.2d 201, 203 (D.C. Cir 1990)).

11

Proceeding Judgment until the oral argument stage of this appeal.[28] There, counsel—for the first time—argued that the Family Trust was not bound by the Intestacy Proceeding Judgment because it did not receive proper notice of, or due process in relation to, the Intestacy Proceeding. Debtor's counsel did not raise the issue of recognition of foreign judgments generally. The bankruptcy court record reflects that the Debtor stipulated at trial to the admission of the Intestacy Proceeding Judgment as well as the Expert's report and did not object to the Expert's testimony relating to the effect of that judgment.[29] In short, the Debtor did not dispute the validity of the Intestacy Proceeding Judgment or its preclusive effect at trial.

Instead, the Debtor argued to the bankruptcy court and on appeal that the Intestacy Proceeding Judgment transferred "bare legal title" of the Mexican Trust Interest to her.[30] The Debtor characterized this issue before the bankruptcy court as "[w]hether any titular interest in the Mexican Trust vested in [the] Debtor as a result of the intestacy proceeding in Mexico in [2007] was subject to Debtor's fiduciary capacity" as trustee of the Family

---

[28]    In closing argument at trial, Debtor's counsel merely asserted that the Intestacy Proceeding Judgment was "irrelevant" because it had nothing to do with what the Family Trust required. Tr. at 100, *in* Appellant's App. at 169.

[29]    Tr. at 5, *in* Appellant's App. at 73. We note that "[s]tipulations as to facts freely and voluntarily entered into during trial are the equivalent of proof and on appeal neither party will be heard to suggest that the facts were other than as stipulated." *United States v. Campbell*, 453 F.2d 447, 451 (10th Cir. 1972) (citing *Pryor v. Briggs Mfg. Co.*, 20 N.W.2d 279 (Mich. 1945)).

[30]    Appellant's Reply Br. 11.

12

Trust and "therefore not property of the bankruptcy estate."[31] The Debtor admitted she took title to Ronald's Mexican Trust Interest as a result of the Intestacy Proceeding but contended she only held record title as trustee of the Family Trust. By arguing to the bankruptcy court only the import of the Intestacy Proceeding Judgment, not whether the bankruptcy court should give it preclusive effect, the Debtor implicitly accepted the validity and binding nature of the judgment.

The Order does not discuss the preclusive effect issue at all. As a result, we conclude that it did not regard the issue as properly before it.[32] The Debtor's failure to raise in the bankruptcy court the issue of whether the Family Trust was bound by the Intestacy Proceeding Judgment because it did not receive proper notice of the Intestacy Proceeding, and, ultimately, due process, results in the forfeiture of this issue on appeal.[33] Therefore, we will not consider it.[34] Absent extraordinary circumstances, we do not

---

[31]     Joint Pretrial Statement at 3, *in* Appellant's App. at 14.

[32]     *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir. 1991).

[33]     *Richison*, 634 F.3d at 1228 (holding that an issue not raised before the trial court is forfeited). The Debtor may also have waived or forfeited this issue on appeal by stipulating to the admission of the Intestacy Proceeding Judgment at trial and by failing to raise it in her appellate brief. *See Franklin v. Douglas Cty. Dist. Court*, 638 F. App'x 691, 693 (10th Cir. 2015) ("defendants waived the possible forfeiture . . . [where] they had an opportunity to argue forfeiture, but did not."); *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("arguments that are not raised, or are inadequately presented, in an appellant's opening brief" are forfeited).

[34]     *Bishop v. Smith*, 760 F.3d 1070, 1095 (10th Cir. 2014) (citing *Richison*, 634 F.3d at 1228) (holding where a party attempts to rely upon a forfeited issue, the failure to argue for plain error on appeal "marks the end of the road for an argument for reversal not first presented to the [trial] court"). The Debtor has made no plain error argument on

13

consider issues raised for the first time at oral argument on appeal.[35] None exist here. In any event, even if the Debtor had preserved the issue for appeal, it would not have made a difference. The Debtor, who was the sole trustee of the Family Trust when the Intestacy Proceeding was commenced, had notice of the Intestacy Proceeding—she and Alvin's surviving spouse commenced it.

### b. The bankruptcy court's contradictory findings do not undermine judgment for the Trustee

Next, we address an issue raised in Appellant's reply brief but not specifically identified as an assignment of error on appeal. The Order includes, on its face, contradictory statements in the findings of fact section concerning ownership of Ronald's Mexican Trust Interest at the time of the Debtor's bankruptcy filing. The Order provides in one paragraph that "at the time of the Debtor's December 26, 2013 bankruptcy petition, the Family Trust still owned [Ronald's] interest in the Mexican Trust which owned the Property."[36] However, in the next paragraph, the Order states, "as of the Debtors' [sic] December 26, 2013 bankruptcy proceeding, she [the Debtor] owned, individually, [Ronald's] one-third interest in the Mexican Trust which owned the

---

appeal, accordingly, it is appropriate to decline to exercise our discretion to hear this forfeited issue; *see generally Singleton v. Wulff*, 428 U.S. 106, 119 (1976) (holding that consideration of issues raised for the first time on appeal "is left to the discretion of the appellate court").

[35] *United States v. Gruber*, 192 F. App'x 773, 776 n.1 (10th Cir. 2006) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time at oral argument.") (citing *United States v. Lande*, 40 F.3d 329, 331 n.2 (10th Cir. 1994)).

[36] Order at 2, *in* Appellant's App. at 17.

Property."[37] While these findings are contradictory, a review of the record leads us to hold the bankruptcy court nevertheless did not err in entering judgment in favor of the Trustee.[38]

Whether Ronald's Mexican Trust Interest remained property of the Family Trust following the Intestacy Proceeding, or became property of the estate pursuant to § 541, is a mixed question of law and fact. Mixed questions of law and fact are reviewed under the *de novo* or clearly erroneous standards, depending on whether the mixed question involves primarily the consideration of legal principles or a factual inquiry.[39] Based on the stipulations of the parties before the trial court, the uncontroverted Expert's testimony, and the nature of the other evidence at trial, the underlying facts relating to the Intestacy Proceeding Judgment are largely uncontroverted. Inquiry as to the Debtor's rights in the Mexican Trust following the death of her husband primarily involves legal analysis. Consequently, we will conduct a *de novo* review of the bankruptcy court's conclusion that Ronald's Mexican Trust Interest is property of the Debtor's bankruptcy estate.[40] "When conducting a *de novo* review, the appellate court is not constrained by the

---

[37]   *Id.* at 2-3, *in* Appellant's App. at 17-18.

[38]   The contradictory findings appear to be an inadvertent mistake as the bankruptcy court stated that Ronald's Mexican Trust Interest became property of the bankruptcy estate on multiple occasions and entered judgment in accordance with this conclusion.

[39]   *See* note 21, *supra*.

[40]   *Armstrong v. Comm'r of Internal Revenue*, 15 F.3d 970, 973 (10th Cir. 1994) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)); *See also LTF Real Estate Co. v. Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 643 (10th

trial court's conclusions, and may affirm the trial court on any legal ground supported by the record."[41]

The Mexican Trust is a creature of Mexican law. Any interest in the Mexican Trust is solely a construct of Mexican law. Mexican law creates and governs who possesses rights in the Mexican Trust, the extent of those rights, and transfer of those rights upon the owner's death. We believe the Debtor's testimony, the Expert's testimony, and the translation of the Intestacy Proceeding Judgment all support the bankruptcy court's conclusion that the Intestacy Proceeding resulted in transferring Ronald's Mexican Trust Interest to the Debtor in her individual capacity under Mexican law. The preclusive effect of that judgment in the proceeding before the bankruptcy court is not an issue preserved for appeal. There is no evidence that the Debtor subsequently transferred Ronald's Mexican Trust Interest to the Family Trust in the 6 years after the Intestacy Proceeding placed title in her, individually. Despite initially stating that Ronald's Mexican Trust Interest belonged to the Family Trust on the petition date, the bankruptcy court subsequently found it belonged to the Debtor on the petition date and entered judgment in favor of the Trustee in accordance with that finding. Therefore, the

---

Cir. BAP 2014) ("We review a bankruptcy court's determination whether property is property of the estate *de novo*."), *aff'd*, 619 F. App'x 779 (10th Cir. 2015); *Bank of Cushing v. Vaughan (In re Vaughan)*, 311 B.R. 573, 577-78 (10th Cir. BAP 2004) ("Where . . . the salient facts are undisputed, we conduct *de novo* review of the lower court's conclusions of law.") (citing *Andersen v. UNIPAC-NEBHELP (In re Andersen)*, 179 F.3d 1253, 1255 (10th Cir. 1999)).

[41] *In re Vaughan*, 311 B.R. at 578 (citing *Wolfgang v. Mid-Am. Motorsports, Inc.*, 111 F.3d 1515, 1524 (10th Cir. 1997)).

record and the bankruptcy court's decision support the conclusion that the Debtor, individually, owned Ronald's Mexican Trust Interest at the time of her bankruptcy filing. And as a result, that interest became property of the bankruptcy estate pursuant to § 541(a). Accordingly, the bankruptcy court's contradictory findings constitute harmless error.[42]

### c. The Debtor's arguments do not alter the effect of the Intestacy Proceeding Judgment

Having addressed the bankruptcy court's implicit recognition of the Intestacy Proceeding Judgment and its contradictory fact findings, we now address the Debtor's contention that the bankruptcy court erred in concluding that Ronald's Mexican Trust Interest was property of the bankruptcy estate. The Debtor assigns error through three different arguments. First, the Debtor claims that she never made a qualified distribution out of the Family Trust to divest the Family Trust's rights to Ronald's Mexican Trust Interest. Therefore, the Debtor asserts that because she had no right to Ronald's Mexican Trust Interest, it could not and did not become property of her bankruptcy estate when she filed her bankruptcy case. Second, the Debtor argues the Intestacy Proceeding Judgment's transfer of Ronald's Mexican Trust Interest to her individually resulted in her holding bare legal title for the benefit of the Family Trust. Finally, the Debtor argues that the Family Trust is a spendthrift trust within the meaning of § 541(c)(2), excepting it from the bankruptcy estate. We are not persuaded by any of these arguments.

---

[42]     *See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

17

The Debtor's first argument—that the Intestacy Proceeding Judgment did not result in a qualified distribution allowed by the Family Trust—is not relevant to whether Ronald's Mexican Trust Interest became property of the bankruptcy estate. Regardless of whether the Debtor as trustee of the Family Trust had authority to make such a distribution from the trust,[43] the fact of the matter is that the Debtor voluntarily initiated the Intestacy Proceeding through a representative of her choosing in Mexico. Regardless of whether this violated the terms of the Family Trust or the Debtor's duties as trustee, the Intestacy Proceeding Judgment nonetheless vested ownership of Ronald's Mexican Trust Interest in the Debtor individually.

The Debtor's second argument, that she only held bare legal title to Ronald's Mexican Trust Interest for the benefit of the Family Trust, is undermined by her failure to take actions to remediate the effect of the Intestacy Proceeding Judgment she specifically sought, and which vested the interest in her individually. It is uncontroverted that the Debtor took no action to transfer title to Ronald's Mexican Trust Interest back to the Family Trust between October of 2007 and the date of her bankruptcy petition in 2013. Colorado law presumes a transfer benefits a grantee individually if the description of the grantee does not state the transfer is accepted in a representative capacity.[44] Where this presumption results in mistake, a representative may take corrective action by recording

---

[43] Colo. R. Stat. § 15-16-302 ("[T]he trustee shall observe the standards in dealing with the trust assets that would be observed by a prudent man dealing with the property of another . . . .").

[44] Colo. R. Stat. § 38-30-108(c)(2).

18

an affidavit providing notice that the transfer was to the representative and not the individual.[45] Based on the evidence before it, the bankruptcy court found the Debtor took no action to clarify either the Mexico or the Colorado public records.[46] These findings are not clearly erroneous.

Finally, the Debtor argues the Family Trust constituted a valid spendthrift trust under Colorado law that is excluded from her bankruptcy estate pursuant to § 541(c)(2). Section 541(c)(2) provides that a trust containing a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable" under the Code.[47] For the exception to apply, property must be held by a valid spendthrift trust as of the commencement of the bankruptcy case.[48] But Ronald's Mexican Trust Interest was not held in the Family Trust upon commencement of the bankruptcy case; it was held by the Debtor, individually. Because Ronald's Mexican Trust Interest did not belong to the Family Trust upon commencement

---

[45]  Colo. R. Stat. § 38-30-108(c)(3).

[46]  Order at 3, *in* Appellant's App. at 18 ("There was no evidence any action was ever taken to transfer the Debtor's now-individual interest in the Mexican Trust back to the . . . Family Trust. . . .").

[47]  § 541(c)(2); *see In re Amerson*, 839 F.3d 1290, 1299 (10th Cir. 2016) ("[a] beneficial interest in an ordinary spendthrift trust would clearly qualify for the [§ 541(c)(2)] exemption" if enforceable under state law) (quoting *Gladwell v. Harline (In re Harline)*, 950 F.2d 669, 670 (10th Cir. 1991)).

[48]  *See In re Amerson*, 839 F.3d at 1299 ("Except as provided in subsections (b) and (c)(2)[,]" the estate includes "all . . . interests of the debtor in property as of the commencement of the case.") (quoting § 541(a)(1)).

of the bankruptcy case, § 541(c)(2) does not apply to except such interest from the bankruptcy estate.

## V.    CONCLUSION

Because the bankruptcy court did not err in concluding that Ronald's Mexican Trust Interest vested individually in the Debtor prior to the commencement of the bankruptcy case, and the Debtor took no action to return that interest to the Family Trust, we affirm the Order and judgment determining that the proceeds of the sale of Ronald's Mexican Trust Interest became property of the bankruptcy estate and were subject to turnover.